# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

**O'DONOGHUE & O'DONOGHUE LLP**          }
Daniel J. Keenan, Esq.                   }
Charles W. Gilligan, Esq.                }
325 Chestnut Street, Suite 600           }
Philadelphia, PA 19106                   }
Telephone: (215) 629-4970                }
Email:  dkeenan@odonoghuelaw.com         }
        cgilligan@odonoghuelaw.com        }
                                         }
Counsel to Bricklayers and Allied        }          **Chapter 11**
Craftworkers Local 1 of PA/DE            }

_____

In re:                                   }          **Case No. 24-20009 (JNP)**
                                         }
**KIMO TILE @ MARBLE, LLC d/b/a**         }          **Adv. No. 25-01226 (JNP)**
**KIMO TILE & MARBLE, LLC,**              }
                                         }
            **Debtor.**                   }

_____

**KIMO TILE @ MARBLE, LLC d/b/a**         }
**KIMO TILE & MARBLE, LLC**               }
                                         }
            **Plaintiff,**                }
                                         }
    **v.**                                }
                                         }
**TILE SETTERS AND TILE FINISHERS**       }
**UNION OF NEW YORK AND NEW**             }
**JERSEY, LOCAL NO. 7 OF THE**            }
**INTERNATIONAL BRICKLAYERS**             }
**AND ALLIED CRAFTWORKERS; and**          }
**BRICKLAYERS AND ALLIED**                }
**CRAFTWORKERS LOCAL 1 PA/DE,**           }
                                         }
            **Defendants.**               }

_____

# DEFENDANT BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 PA/DE REPLY IN SUPPORT OF MOTION TO DISMISS

Respectfully submitted,

Dated: July 29, 2025

/s/ Daniel J. Keenan
Daniel J. Kennan, Esq.
Charles W. Gilligan, Esq.
**O'DONOGHUE & O'DONOGHUE LLP**
325 Chestnut St., Suite 600
Philadelphia, PA 19106
Telephone: (215) 629-4970
Facsimile: (215) 629-4996
dkeenan@odonoghuelaw.com
cgilligan@odonoghuelaw.com

*Counsel for Defendant Local 1*

# <u>TABLE OF CONTENTS</u>

A.   Kimo Has Failed to Rebut Local 1's Argument that its Attempt to Enforce the Automatic Stay Against Local 1 is Barred by Federal Law ......................1

B.   Kimo Has Failed to Rebut Local 1's Argument that Its State Law Claims are Preempted by Federal Labor Law ...................................................................7

    1.   Count III Must be Dismissed ................................................................8

    2.   Count V Must be Dismissed................................................................10

    3.   Count II Must be Dismissed...............................................................13

C.   The Court Should Deny Kimo's Request for Leave to Amend the Adversary Complaint Because Any Amendment Would be Futile.................................14

D.   Conclusion .......................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beidleman v. Stroh Brewery Co.*,
   182 F.3d 225 (3d Cir. 1999) ...............................................................................13

*Comprehensive Neurosurgical, P.C. v. Valley Hospital*,
   312 A.3d 243 (N.J. 2024) .....................................................................................11

*Costa v. Verizon New Jersey, Inc.*,
   936 F. Supp. 2d 455 (D.N.J. 2013).......................................................................12

*Fischer v. G4S Secure Sols. USA, Inc.*,
   2011 WL 3859742 (D.N.J. Aug. 31, 2011)..........................................................15

*Geltzer v. Soshkin (In re Brizinova),*
   588 B.R. 311 (Bankr. E.D.N.Y. 2018) ...................................................................3

*Holst v. Oxman,*
   290 Fed.Appx. 508 (3d Cir. 2008) .......................................................................14

*In re Allentown Ambassadors, Inc.*,
   361 B.R. 422 (E.D. Pa. 2007)..................................................................................5

*In re Atl. Bus. & Cmty. Corp.,*
    901 F. 2d 325 (3d Cir. 1990) .............................................................................3, 4

*In re Trump Entertainment Resorts*,
   810 F.3d 161 (3d Cir. 2016)..................................................................... 3, 4, 5, 6

*Massarsky v. Gen. Motors Corp.,*
   706 F.2d 111 (3d Cir.1983) ..................................................................................14

*San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon,*
   359 U.S. 236 (1959) ............................................................................. 7, 8, 10, 13

**Statutes**

29 U.S.C. § 185 ................................................................................................. 10, 15

**Rules**

Fed. R. Civ. P. 12(b) ........................................................................................ 1, 15

Fed. R. Bankr. P. 8013 ....................................................................................... 1

Defendant Bricklayers & Allied Craftworkers Local 1 PA/DE (hereinafter "Local 1" or "Union") submits this Reply in Support of its Motion to Dismiss Adversary Complaint pursuant to Fed. R. Civ. P. 12(b) and Federal Rule of Bankruptcy Procedure 8013. The Plaintiff Kimo Tile @ Marble LLC's ("Kimo") Response in Opposition ("Response") fails to adequately address the fatal defects of the Adversary Complaint and continues to rely upon allegations that are clearly preempted and are otherwise devoid of the facial plausibility required to establish that Local 1 violated the Bankruptcy Code or is liable for tort claims cognizable under New Jersey state law. Kimo's Response also fails to meaningfully rebut any of Local 1's arguments. Instead, the Response serves as a compilation of the same, previously denied legal arguments and cherry-picked quotes from entirely distinguishable case law that simply do not demonstrate any entitlement to relief. Accordingly, the Court should dismiss the Adversary Complaint in its entirety.

### A.    <u>**Kimo Has Failed to Rebut Local 1's Argument that its Attempt to Enforce the Automatic Stay Against Local 1 is Barred by Federal Law**</u>

Local 1 moved to dismiss Kimo's Count IV claims seeking actual and punitive damages for allegedly violating the automatic stay imposed by the Bankruptcy Code because all of Kimo's allegations regarding Local 1's conduct arise out of, and exclusively involve, a "labor dispute" as that term is defined in the Norris-LaGuardia Act. 29 U.S.C. 101; *see* ECF No. 19-1, pp. 6-12. In its Response, Kimo admits, as it

must, that the definition of a "labor dispute" as provided by the Norris-LaGuardia Act is "intentionally broad," but implausibly denies that a labor dispute existed between the parties and attempts to cast Local 1's decision to terminate the collective bargaining agreement with Kimo ("CBA") and disclaim interest in a prospective union representational relationship as "a contrivance by Local 1 to drive the Debtor out of business." ECF No. 26, p. 5, ¶ 21. In support of this untenable allegation, Kimo trots out a series of legal arguments previously discredited by this Court in attempt to establish that this Court has jurisdiction over a labor dispute because the CBA – and the work performed by skilled craftspersons thereunder – is an "executory contract[] and property of the Debtor's estate." ECF No. 26, p. 6, ¶ 24. In Kimo's flawed reasoning, it follows that because Bankruptcy courts are tasked with applying the Bankruptcy Code to executory contracts and estate property, this Court has jurisdiction over the untenable allegations in the Adversary Complaint.

That is not so. As it has since the filing of the Adversary Complaint in this matter, Kimo attempts to rely upon cases that are inapplicable to the law and issues raised herein and are easily distinguishable. *See* ECF No. 2, p. 12, ¶¶ 63, 64; ECF No. 26, p. 6, ¶¶ 24, 25. Indeed, Kimo summarized its argument regarding whether it sufficiently plead Count IV of the Adversary Complaint as follows:

> Were the Court to dismiss Count IV for stay violations, it would essentially be saying that CBAs are not subject to the automatic stay – period. The Debtor does not believe that to be the case and has cited

2

numerous cases acknowledging that CBAs and other contracts, such as
the CBAs, as assets of the Debtor that can be assumed. *See Geltzer v.
Soshkin (In re Brizinova)*, 588 B.R. at 326; *In re Atl. Bus. & Cmty.
Corp.*, 901 F.2d at 327; *In re Trump Ent. Resorts*, 810 F.3d 161, 168 (3d
Cir. 2016).

ECF No. 26, p. 7, ¶ 31. Whether "the Debtor *believe[s]* that to be the case" is

immaterial.  Unfortunately for Kimo, no amount of foot stomping nor the dogged

pursuit of an untenable position devoid of supporting authority renders its allegations

plausible. Despite its explicit representations of the contrary to this Court, Kimo has

not cited a single case that holds a collective bargaining agreement is an asset of a

debtor.

Indeed, *Geltzer v. Soshkin (In re Brizinova)* involved a Chapter 7 trustee

attempting to recover proceeds from a daughter in law's post-petition sale of auto

parts owned by an individual debtor's company, and the portion of the decision cited

by Kimo stands for the proposition that "'[p]roceeds" of estate property are also

property of the estate." *Id*., 588 B.R. 311, 326 (Bankr. E.D.N.Y. 2018). The case

does not involve labor unions, a collective bargaining agreement, or consideration

of the Norris-LaGuardia Act. Similarly, *In re Atl. Bus. & Cmty. Corp.*, involved a

debtor taking control of a radio station through force and depriving it of revenue,

and the Third Circuit held that "[w]e join with the Court of Appeals for the Second

Circuit in holding that a *possessory interest in real property is within the ambit of

the estate in bankruptcy* under Section 541, and thus the protection of the automatic

3

stay of Section 362." *Id*., 901 F.2d 325, 328 (3d Cir. 1990) (emphasis added). That case accordingly considers *real property* – not a collective bargaining agreement or the existence of employer union relations as a form of "property." Lastly, the portion of the decision issued in *In re Trump Ent. Resorts* and cited by Kimo does not hold or state that a collective bargaining agreement is an "asset[] of [a] Debtor that can be assumed." *Id*., 810 F.3d 161, 170 (3d Cir. 2016). Instead, the court therein simply recited an argument pending before it that the Section 1113 process is not necessary to "reject" an expired collective bargaining agreement. *Id*. Put simply, Kimo has persisted in its failure to provide the Court with any authority to establish that its cause of action alleging stay violations and state law tort claims involves anything other than a preempted labor dispute, or that this Court accordingly has jurisdiction over plausible allegations that raise a right to relief above the speculative level. None of the other cases cited by Kimo in these proceedings involve a collective bargaining agreement or Section 1113 of the Bankruptcy Code, and each case instead involves a distinct type of commercial transaction, petroleum ownership, or lease and franchise agreements.

Contrary to Kimo's arguments, and as established in the Motion to Dismiss, the provisions of the Norris-LaGuardia Act apply where an employer-employee relationship is "the matrix of the controversy," and there is not doubt under longstanding federal law that a dispute arising out of a collective bargaining

agreement is a "labor dispute" within the meaning of the Act because the agreement "embodies the terms and conditions of employment." ECF No. 19-1, p. 8. All of Local 1's challenged actions in this matter – communicating with the Plaintiff and its member employees regarding violations of the collective bargaining agreement, termination of that agreement in accordance with its own terms, advising its member employees of the same, disclaiming interest in a prospective representational relationship - undisputably arise from a "labor dispute" and fit squarely within the definition thereof as provided by longstanding case law. ECF No. 19-1, pp. 8-9.

Thus, were the Court to dismiss Count IV, it would not, as Kimo asserts, "essentially be saying that CBAs are not subject to the automatic stay – period," (ECF No. 26, p. 7, ¶ 31), it would instead reaffirm the longstanding principle that courts interpreting the scope of the automatic stay "do so to avoid giving the bankruptcy estate an undue legal advantage in its relationship with other parties." *Trump Entertainment Resorts, Inc.*, 534 B.R. at 103 *quoting In re Allentown Ambassadors, Inc.*, 361 B.R. 422, 439-40 (E.D. Pa. 2007)). As Local 1 has established, Kimo is attempting to weaponize the Bankruptcy Code in a transparent attempt to achieve an advantage in bargaining with the Local that it could not obtain outside the bankruptcy context. ECF No. 19-1, pp. 10-11. The parties negotiated a CBA which had termination provisions, here unmodified by Kimo through the Section 1113 process. Nothing in the Bankruptcy Code, including the automatic stay,

5

alters the terms of that agreement in Kimo's favor by virtue of its attempt to reorganize its debts, and disputes over the application of the terms of the agreement constitute a labor dispute. What is more, Local 1 has established, and Kimo has not refuted, that Local 1 enjoys and exercised here an unequivocal right to disclaim interest in representing Kimo's employees and severing its relationship with Kimo. ECF No. 19-1, p. 11-12.

Independent of the Norris-LaGuardia Act preemption considerations, Local 1 established that Counts I and IV must also be dismissed for failure to state a claim upon which relief can be granted because the Adversary Complaint functions as a transparent attempt to avoid Local 1's termination of the CBA through its existing terms, unmodified by Section 1113 of the Bankruptcy Code. ECF No. 19-1, pp. 12-15. Local 1 provided longstanding case law interpreting Section 1113 which establishes beyond dispute that (1) "Section 1113 explicitly forbids debtors from terminating or altering any provisions of a collective bargaining agreement prior to compliance with the provisions of § 1113[,]" *In re Trump Entertainment Resorts*, 810 F.3d at 168, and (2) that a collective bargaining agreement continues to operate by its terms absent modification through that process. ECF No. 19-1, pp. 12-13. Thus, application of the unmodified termination provision in the applicable CBA did not, and could not, violate the automatic stay. In its Response, Kimo failed to address this argument in any meaningful way. ECF 26, pp. 7-8.

6

Counts I and IV of the Adversary Complaint are preempted, this Court accordingly has not subject matter jurisdiction, and the Counts fail to state a claim upon which relief can be granted. Accordingly, those Counts must be dismissed in their entirety.

**B.**   **Kimo Has Failed to Rebut Local 1's Argument that Its State Law Claims are Preempted by Federal Labor Law**

Local 1 has established in its Motion to Dismiss that Kimo's civil conspiracy, tortious interference, and good faith and fair dealing claims plead in Counts II, III, and V of the Adversary Complaint must be dismissed because those state law tort claims are preempted by federal labor law, including the National Labor Relations Act ("NLRA") and the Labor Management Relations Act ("LMRA") because the claims necessarily center on, much less "implicate," protected concerted activity under Section 7 of the Act or prohibited unfair labor practices under Section 8, as well as interpretation of the CBA. ECF No. 19-1, pp. 15-21. In its response, Kimo fails to address the thrust of the argument that all of Local 1's activity – as explicitly plead by Kimo - without question falls within the gambit of protected or secondary activity governed exclusively by the NLRA, in turn interpreted and enforced exclusively by the National Labor Relations Board. ECF No. 19-1, p. 16; *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959) ("*Garmon*") ("When an activity is arguably subject to [Section] 7 or

[Section] 8 of the [NLRA], the State as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.").

### 1. Count III Must be Dismissed

In its Response, Kimo attempts to rely on a limited exception to *Garmon* preemption, which provides for concurrent jurisdiction where a state has substantial interest in regulation of the conduct at issue and in which the state's interest does not threaten undue interference with the federal regulatory scheme at issue. ECF No. 26, p. 10, 45. To satisfy this standard, Kimo argues that New Jersey has a substantial interest in regulation of Local 1's conduct because, it alleges, the "majority" of Kimo's work involves "public work." ECF No. 26, p. 10, 49. Kimo argues that the state's substantial interest in the "public work" being completed results in permissible regulation of Local 1's conduct because otherwise the public projects will be delayed or "completely stall[ed]." ECF No. 26, p. 11, 50, 51. It argues that the second prong of the standard is satisfied because adjudication of Count III allegedly:

> … [O]nly concerns Local 1's conduct that affected the Debtor's contract parties and contracts with them – it will not affect, and does not require analysis or consideration of the Local 1 CBA. All Count III concerns is whether or not Local 1 interfered with the Debtor's existing contractual relationships with third parties.

ECF No. 26, p. 11, 52. Notably, Kimo's Response is completely devoid of authority even suggesting, much less establishing, that New Jersey has such a substantial

8

interest[1], or that Local 1's conduct – all of which involves and flows directly from

enforcement and subsequent termination of the CBA – can be adjudicated without

deciding whether Local 1's challenged actions constitute unlawful coercion of these

very same parties under Sections 8(b)(1) or 8(b)(4) of the NLRA, or, conversely,

enjoyed the protection afforded concerted activity under Section 7 of thereof. ECF

No. 19-1, pp. 18-19. What is more, this line of argument quite literally *supports*

Local 1's position. The portion of the Response quoted above reads as though the

National Labor Relations Board were framing an issue for decision pursuant to its

own adjudication process and utilization of its expertise in this preempted field. ECF

No. 19-1, p. 16.

Indeed, Local 1 has outlined cases and reasoning which establish that each

category of Local 1's activity as alleged by Kimo – including the termination of the

CBA, communications with members and other business about that topic, refusing

to inappropriately force its members to work for Kimo despite demonstrated and

well placed fears of wage withholding – falls squarely within the type of behavior

governed exclusively by the NLRA. ECF No. 19-1, pp. 16-17, 18-19. Fatally for

---

[1]   Contrary to Kimo's assertion, none of the actions taken by Local 1 during the period relevant to this proceeding occurred within the State of New Jersey or on jobs that were financed by New Jersey or subordinate political entities.   All work performed by Loal 1 members was performed on private sector jobs within the Commonwealth of Pennsylvania.

purposes of Count III's survival in this forum, Local 1 also cited, and Kimo

completely failed to address, longstanding law which holds that courts in the Third

Circuit and New Jersey regularly dismiss tortious interference claims that arise from

labor disputes precisely like the one at issue here. ECF No. 19-1, pp. 18-19.

### 2. Count V Must be Dismissed

Local 1 further established in its Motion to Dismiss that Count V of the

Adversary Complaint must be dismissed as completely preempted by the Labor

Management Relations Act (LMRA), 29 U.S.C. § 185, which completely preempts

any state law claim founded directly on rights created by a collective bargaining

agreement or substantially dependent upon an analysis of a collective bargaining.

ECF No. 19-1, p. 19. What is more, the allegations in the Adversary Complaint and

Kimo's arguments in its Response further establish that any alleged activity by Local

1 regarding the termination of the CBA and its communications with its members

and other businesses about that topic are clearly subject to the NLRA, fall within the

exclusive competence of the National Labor Relations Board, and are accordingly

subject to *Garmon* preemption, as is outlined in the Motion to Dismiss and *supra*.

ECF Nos. 1; 26, pp. 15-16.

In its Response, Kimo relies on a narrow exception to the complete

preemption provided for in Section 301 of the LMRA which holds that a claim will

not be preempted by the LMRA where it can be resolved without substantially

interpreting the CBA. ECF No. 26, p. 14, 74-76. Kimo argues that Count V is not preempted because the Court will not have to interpret the CBA to determine whether Local 1 terminated it according to its unmodified terms and subsequently communicated with Kimo and other entities regarding that termination in good faith. ECF No. 1, p. 23, 146-148; ECF No. 26, pp. 14-15, 76-79. Kimo's claims in this Count center on an allegation that Local 1 breached an implied duty to refrain from truthfully advising its own members and third parties that it terminated the CBA with Kimo. ECF No. 26, pp. 15-16, 79, 82-85.

As Local 1 has established, however, any such determination is necessarily "substantially dependent upon an analysis of the CBA," is therefore entirely preempted. ECF No. 19-1, pp. 19-20. Indeed, Local 1 established in the Motion to Dismiss that although "[t]he essential elements of this claim under New Jersey law require the Plaintiff to prove that there was a contract between Local 1 and the Plaintiff and that Local 1's 'alleged misdeeds prevented the plaintiff from enjoying the full benefit of the terms of a particular bargain[,]'" the only "contract between Local 1 and the Plaintiff that is identified in the Complaint is the CBA." ECF No. 19-1, p. 19; *Comprehensive Neurosurgical, P.C. v. Valley Hospital*, 312 A.3d 243, 261-62 (N.J. 2024). Kimo pleads in the Adversary Complaint and argues in its Response that Local 1's termination of the same and its subsequent truthful communications about that termination establish that Local 1 acted "in bad faith and

11

with malicious motive" and in so doing "den[ied] the plaintiff some benefit of the
bargain originally intended" in the CBA. ECF No. 1, pp. 23-24, 148-149; ECF No.
26, pp. 15-16, 77-79, 81-82. As Local 1 has established, determining whether Local
1 acted in bad faith and whether Kimo was entitled to some benefit not expressly
provided in the CBA necessarily requires a "substantial analysis of the" CBA. ECF
No. 19-1, pp. 19-21; *Costa v. Verizon New Jersey, Inc.*, 936 F. Supp. 2d 455, 459
(D.N.J. 2013).

Indeed, "[i]n enacting § 301 of the LMRA, Congress vested jurisdiction in the
federal courts over suits for contract disputes between employers and labor unions
representing certain industries," and "the [Supreme] Court further extended the
reach of federal preemption in this area, finding that the preemptive force of § 301
applied to tort, as well as contract, suits implicating 'questions relating to what the
parties to a labor agreement agreed, and what legal consequences were intended to
flow from breaches of that agreement.'" *Costa*, 936 F. Supp. 2d at 458–59. Within
that framework, the Third Circuit has held that a tort claim for fraudulent
misrepresentation was preempted by the LMRA because, as here:

> [T]he [alleged] "misrepresentation" at issue is the appellees' refusal to
> acknowledge the validity of the 1985 [collective bargaining
> agreement]. Clearly, for a court to decide the merits of this claim it must
> interpret those terms in the agreement setting forth the appellees'
> obligations, for if the 1985 [collective bargaining] agreement does not
> contain terms that bind the appellees, then no "misrepresentation"
> exists.

*Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 233 (3d Cir. 1999). In so doing, the Third Circuit rejected the Plaintiff's argument that "[t]he employees maintain that in pleading this count, they at no point seek to have the court interpret any substantive provisions of the 1985 [collective bargaining agreement]." *Id*. Clearly, the allegations in Count V are preempted by the LMRA and must be dismissed. Alternatively, Local 1's underlying conduct is clearly subject to *Garmon* preemption, providing a separate preemptory basis for dismissal of Count V.

### 3. Count II Must be Dismissed

Related to all of the above arguments, incorporated herein, Local 1 established in its Motion to Dismiss that the civil conspiracy claims in Count II of the Adversary Complaint must be dismissed. ECF No. 19-1, pp. 22-23. Kimo alleges that Local 1 conspired with the other Defendant when allegedly tortiously interfering with its contractual relations. Third Circuit precedent is clear that where, as here, a civil conspiracy claims depends on the performance of some underlying tortious act, the civil conspiracy claim must be dismissed where claim alleging the necessary underlying act does not survive a motion to dismiss. ECF No. 19-1, p. 22; *see also Beidleman*, 182 F.3d at 235- 36 (affirming dismissal of civil conspiracy claim when underlying claims were preempted by Section 301 of the Labor Management Relations Act). In the Response, Kimo does not dispute this plain reality. Instead, it

13

regurgitates its arguments regarding its untenable tortious interference claim. Local 1 has established that the underlying tortious interference claim must be dismissed, and black letter Third Circuit law holds that Count II must necessarily suffer the same fate.

### C.    The Court Should Deny Kimo's Request for Leave to Amend the Adversary Complaint Because Any Amendment Would be Futile

In its Response, Kimo requests that the Court grant it leave to amend Count V of the Adversary Complaint if it decides that Count is preempted by the LMRA. The proposed amendment would "amend Count V to a claim under Section 301 of the LMRA." ECF No. 26, p. 16. Any such amendment would be futile, and the Court should not grant the request. According to the Third Circuit, "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Holst v. Oxman,* 290 Fed.Appx. 508, 510 (3d Cir. 2008). Accordingly, "[t]he trial court may thus deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.,* 706 F.2d 111, 125 (3d Cir.1983). As has been briefed in detail in the Motion to Dismiss and *supra*, that is clearly the case here.

First, the LMRA provides for exclusive jurisdiction in Article III district courts, and not in bankruptcy courts, for causes of action under the LMRA:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce

14

> as defined in this chapter, or between any such labor organizations, may
> be brought in any district court of the United States having jurisdiction
> over the parties, without respect to the amount in controversy or without
> regard to the citizenship of the parties.

29 U.S.C. § 185(a). What is more, as Local 1 has established in its Motion to

Dismiss, Kimo has not, and cannot, plead that it has exhausted any contractual

grievance procedure contained in the CBA prior to bringing a valid Section 301

claim under the LMRA. Additionally, the LMRA exclusively concerns suits alleging

violations of *the CBA between an employer and a labor organization*, meaning that

tort claims and fair dealing claims are not cognizable before a district court under

that statute; only breach claims survive muster. Accordingly, the Court should

follow the district court's lead in *Fischer* and, at best, "dismiss the claim without

prejudice to bringing the claim pursuant to LMRA, to the extent Plaintiff has such a

colorable claim under the applicable law." *Fischer v. G4S Secure Sols. USA, Inc.*,

2011 WL 3859742, at *4 (D.N.J. Aug. 31, 2011). Leave to amend under the LMRA

must not be granted.

###    D.    <u>Conclusion</u>

For all the foregoing reasons, Local 1 respectfully requests that the Court

dismiss all claims in this action asserted against it pursuant to Fed. R. Civ. P. 12(b)(1)

and 12(b)(6), as this Court does not have subject-matter jurisdiction, and the

Plaintiff's other claims fail to state a claim upon which relief can be granted.

Respectfully submitted,

Dated: July 29, 2025

/s/ Daniel J. Keenan
Daniel J. Kennan, Esq.
Charles W. Gilligan, Esq.
**O'DONOGHUE & O'DONOGHUE LLP**
325 Chestnut St., Suite 600
Philadelphia, PA 19106
Telephone: (215) 629-4970
Facsimile: (215) 629-4996
dkeenan@odonoghuelaw.com
cgilligan@odonoghuelaw.com

*Counsel for Defendant Local 1*